J-S61031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: H.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1531 EDA 2019 |

Appeal from the Order Entered April 29, 2019
in the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000509-2019

BEFORE: BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED DECEMBER 16, 2019**

Appellant, H.H. ("Mother"), files this appeal from the order entered April 29, 2019, in the Philadelphia County Court of Common Pleas, adjudicating her male child with father, J.G. ("Father"), J.G., born in March 2019 ("Child"), dependent, finding abuse as defined by 23 Pa.C.S. § 6303 and determining a report of abuse was founded as to Mother and Father,[1] and suspending Mother's and Father's visitation with Child, pending further order of court. After review, we affirm the trial court's order.

The trial court summarized the procedural and factual history as follows:

On January 24, 2018, the Department of Human Services ("DHS") received a General Protective Services ("GPS") report alleging that Mother gave birth to an infant girl ("Infant") and that

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Mother does not challenge the adjudication of Child dependent or the finding of abuse.

both tested positive for marijuana and cocaine. On April 8, 2018, [] Infant was found dead lying between Mother and Father in their bed. [] Infant died while Mother and Father were sleeping. The cause of death could not be determined by the Medical Examiner of Philadelphia. The Medical Examiner's Report, however, reported that when [] Infant was found dead a partially smoked cigarette was found in the infant's blanket and that adjacent to Mother's bed was a crack cocaine pipe, empty vials and beer cans. Mother later admitted that when [] Infant died in her bed [] Mother was under the influence of drugs.

On March 22, 2019[,] DHS received a GPS report alleging that Mother gave birth to [] Child [in] March [], 2019 and that both Mother and Child tested positive for marijuana and cocaine at delivery. Due to Mother's history of mental illness, substance abuse and the death of [] Infant on April 8, 2018, DHS filed a petition to adjudicate [] Child [] dependent. On April 29, 2019, the trial court held [an adjudicatory] hearing to determine (1) if Child [] should be adjudicated dependent; (2) if aggravated circumstances existed and (3) whether reasonable efforts to reunify the family should be made or continue to be made. Mother

was present and represented by counsel during the hearing.[2], [3] After a full hearing on the merits, the trial court found clear and convincing evidence to adjudicate the Child dependent. The trial court also found that aggravated circumstances existed and that reasonable efforts to preserve the family need not be made.

---

[2] Father was present and represented by counsel, as well. While Father presented an exhibit, neither Mother nor Father testified on their own behalf.

Moreover, Child was represented by a guardian *ad litem*, also referred to as a child advocate, Nghi Duong Vo, Esquire. This Court extended the requirements of *In re Adoption of L.B.M.*, 639 Pa. 428, 161 A.3d 172 (2017), and its progeny to dependency actions generally. *See In re Adoption of L.B.M.*, 639 Pa. 428, 432, 441-42, 161 A.3d 172, 175, 180 (2017) (plurality) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); *see also In re T.S.*, ____Pa. ____, 192 A.3d 1080, 1089-90, 1092-93 (2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-guardian *ad litem* to serve a dual role and represent a child's non-conflicting best interests and legal interests); *see also In re J'K.M.*, 191 A.3d 907 (Pa.Super. 2018) (reversing order denying appointment of a separate counsel for dependency proceedings where there was a conflict between the child's best interests and legal interests). Given Child's extreme young age, we find the requirements of *L.B.M.* and *T.S.* were satisfied. We note, however, that in *In re: Adoption of K.M.G., Appeal of T.M.G.*, ____ A.3d ____, 2019 WL 4392506 (Pa.Super., filed September 13, 2019) (*en banc*), *petition for allowance of appeal granted*, ____ A.3d ____, 362 WAL 2019 (Pa. filed 12/9/19), this Court held it has the authority only to raise *sua sponte* the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation.

[3] In support of its petition, DHS presented the testimony of Michelle Ludwig, DHS social worker supervisor; Portia Henderson, DHS investigative social worker; and Tiara Clay, CUA case manager, Catholic Community Services. Notes of Testimony ("N.T."), 4/29/19, at 4. DHS additionally presented exhibits DHS Exhibit 1 through 5, which were marked and admitted without objection. *Id.* at 10, 12, 28.

Visitation between [] Mother and Child was ordered suspended.[4], [5] . . .

Trial Court Opinion ("T.C.O."), 8/1/19, at 2-3 (unpaginated) (citations to record omitted).

In finding aggravated circumstances and that no reasonable efforts at reunification need be made, the trial court stated,

> A history of crack cocaine use, which was part of the testimony from a couple years ago when this fatality, not even a couple years ago, one year ago where this fatality occurred in the presence of [M]other and [F]ather in the same house.
>
> Also, this is the third child born with crack cocaine and marijuana in their system.
>
> . . .
>
> Or second child, excuse me. Second child born with crack cocaine and marijuana in his system. The admission by mother and father to drug abuse, namely crack cocaine. And a prior indicated report from DHS with regard to child abuse.
>
> So that's my finding.
>
> No reasonable efforts be made to reunite this one-month-old child. . . .[6]

_____

[4] We observe that the court suspended visitation between Mother and Father and Child. Mother filed a motion for reconsideration on May 12, 2019. Said motion was denied by order dated May 15, 2019, and entered May 16, 2019. *See* Order 5/16/19.

[5] The court additionally indicated that the report from April 8, 2018 was founded as to Mother and Father and made a finding of child abuse as defined by 23 Pa.C.S. § 6303. Order of Adjudication and Disposition, 4/29/19, at 2.

[6] While the court made a finding of aggravated circumstances, as reflected by the subsequent permanency review order, Child's permanency goal remained reunification. *See* Permanency Review Order, 7/17/19.

N.T., 4/29/19, at 39-40.

Further, as to visitation, the trial court continued,

I'm suspending any visitation until I get a better read on whether or not these people are cooperating and drug free, if not the visitation will remain or I'm sorry, will not occur.

**Id.** at 42.

Mother, through appointed counsel, filed a timely notice of appeal on May 27, 2019, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises the following issue for our review:

Whether the trial court committed an error of law and abuse of discretion when it suspended visits between the mother, H.H.[,] and her infant son, J.G.[?]

Mother's Brief at 4.[7]

We observe our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the

---

[7] While Mother additionally raised that the trial court erred and/or abused its discretion by ordering that DHS no longer follow their mandate to provide reasonable efforts to effectuate reunification in her Rule 1925 concise statement, we conclude that Mother waived this issue as she failed to raise it in the statement of questions involved section of her brief and failed to include any argument and/or discussion related to this issue in her brief. **See Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); **see also In re W.H.**, 25 A.3d 330, 339 n.3 (Pa.Super. 2011); **see also In re M.Z.T.M.W.**, 163 A.3d 462, 465-66 (Pa.Super. 2017).

lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010) (citations omitted); *see also In the Interest of L.Z.*, 631 Pa. 343, 360-361, 111 A.3d 1164, 1174 (2015). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

Further, in dependency cases, where reunification remains the goal, this Court has stated that parental visitation of the child may not be denied or reduced unless it poses a grave threat to the child. *See In re C.J.*, 729 A.2d 89, 95 (Pa.Super. 1999). Where the permanency goal is no longer reunification, the court may suspend, limit, or deny visitation, if it is in the best interests of the child to do so. *See id.* (stating, "[t]he 'best interests' standard, in this context, is less protective of parents' visitation rights than the 'grave threat' standard"). In *In re C.B.*, 861 A.2d 287 (Pa.Super. 2004), we explained,

> The "grave threat" standard is met when the evidence clearly shows that the parent is unfit to associate with his or her children; the parent can then be denied the right to see them. This standard is satisfied when the parent demonstrates a severe mental or moral deficiency that constitutes a grave threat to the child.

*In re C.B.*, 861 A.2d at 293-294 (citations and some quotations omitted).

Nevertheless, "[i]n rare instances, we have approved restricting or temporarily suspending visitation even though there has been no showing of

such severe mental or moral deficiencies in the parent as would constitute a grave threat to the child's welfare." ***In re Damon B.***, 460 A.2d 1196, 1198 (Pa.Super. 1983) (holding reduction of mother's visitation rights was appropriate, even absent showing of mother's severe mental or moral deficiencies which would constitute grave threat to child's welfare, where visits were counterproductive to child's development of any bond with mother, and child experienced severe stress during visits; and reduction of visitation was temporary and limited in time, where court scheduled review hearing within next seven months). Thus, in ***In re Damon B.***, we concluded that, although the trial court improperly applied the "best interest" standard instead of the "grave threat" standard, the error did not require reversal of the order temporarily reducing visitation because this Court can affirm the trial court's ruling on any basis.

In the case *sub judice*, in determining that it was in Child's best interests to suspend Mother's visitation with Child, the trial court reasoned,

> In the instant case, the trial court determined that visitation was to be suspended in order to find if Mother was capable of controlling her substance abuse problem. The [c]ourts have recognized that where reunification still remains the goal of the family service plan, visitation with a parent will not be denied or reduced unless it poses a grave threat to the child. Evidence of the existence of a grave threat may include documentation or testimony suggesting that visitation between child and parent causes a child significant ill effects, physically or emotionally. Evidence of a grave threat may include documentation or testimony presented by the Commonwealth showing that there are no practicable visitation options that permit visitation and protect the child. [***In re Mary Kathryn T.***, 427 Pa.Super[.] 515, 530 (1993)]. Evidence of a grave threat includes documentation

or testimony presented by the Commonwealth showing that continued visitation has or will undo the good achieved under the child's present placement. [***In re B.G.***,] 774 A.2d 761 ([Pa.Super.] 2001). Where reunification is not a viable option, then visitation may be limited or denied if it is in the best interests of the dependent child. [***In re C.J.***,] 229 A.2d 89, 95 (Pa.Super. 1999). In the instant case, because the court determined that no reasonable efforts be made to reunite the family, the proper standard to review if visitation was to be suspended was based on a determination of [] Child's best interests while balancing the rights of the Mother to visit [] Child. ([***See In the Interest of E.P.***, 1171-72 WDA 2018, 2019 WL 993389 (Pa.Super., filed February 28, 2019) (unpublished memorandum)]. In the instant case, Mother's continued use of drugs; her drug history and the suspect circumstances of [] Infant's death along with the fact [] Child and [] Infant were born with controlled substances in their systems from prenatal drug exposure justified that visitation be suspended. It should be noted, the trial court did not permanently terminate visitation but solely provided an opportunity to assess the scope of Mother's addiction and to protect [] Child from further harm. This decision must be viewed in light of the fact the trial court had determined that aggravated circumstances already existed. Mother's history of drug use and the death of [] Infant justified a suspension of visitation and was in [] Child's best interest.

T.C.O. at 8-9 (unpaginated) (citations to record omitted).

Mother, however, argues that, absent a prior change of goal from reunification, the "grave threat" standard is applicable as to suspension of her visitation with Child. Mother states as follows:

Here[,] the trial court erred applying the "best interests" standard in ordering visits suspended between [Child] and his parents. At the time of the April 29, 2019 Adjudicatory Hearing, [Child] had been in care under two months, there had been no goal change hearing that changed the goal of reunification that was still mandated by the family's single case plan. The case law is clear that where reunification is the formal case plan goal, visitation may not be limited absent clear and convincing evidence of a "grave threat." DHS and CUA did not meet their burden of proving

that continued supervised visits between [Child] and his parents would pose a grave threat to [Child].

Mother's Brief at 10. Moreover, in the summary of her argument and in conclusion, Mother further asserts that the "best interests" standard is not met. *Id.* at 7, 12.

Upon review, we discern no abuse of discretion. We, however, find that the "grave threat" standard is applicable. In the instant matter, while aggravated circumstances were found and no further reasonable efforts toward reunification ordered at the conclusion of the adjudicatory hearing in question, *see* Aggravated Circumstances Order, 4/29/19, Child's permanency goal remained reunification, *see* Permanency Review Order, 7/17/19. Nevertheless, the record supports the trial court's suspension of parental visitation. The evidence reveals a history of substance use and abuse, as admitted by both Mother and Father. N.T., 4/29/19, at 11-17, 24-27; *see also* Exhibits DHS 2, 3, 4, 4/29/19. Child is the second child born to Mother and Father with cocaine and marijuana in their system. *Id.* at 13, 16-17, 24-27; *see also* Exhibit DHS 2, 4/29/19. As testified by DHS investigative social worker, Portia Henderson, as to the investigation following Child's birth, "Mom was very open. Accepted responsibility. Did admit to using the substance and stated that she had had a substance problem for a while." *Id.* at 26. Ms. Henderson noted, however, that Mother did not indicate that she was engaged in any treatment. *Id.* Ms. Henderson also related that Mother stated that she did not have stable housing. *Id.* at 27. In addition, Mother tested positive

for marijuana and cocaine on April 8, 2019, as well as April 29, 2019, the date of the hearing in question.[8] **See** DHS Exhibit 1, 7/17/19; **see also** Exhibit DHS 3, 4/29/19. Further, as reported by Michelle Ludwig, DHS social worker supervisor, an infant child died one year prior resulting in an indicated report with regard to child abuse with DHS. **Id.** at 19-21; **see also** Exhibit DHS 1, 4/29/19.

Moreover, the trial court suspended visitation "*pending further order of court*." Order of Adjudication and Disposition, 4/29/19, at 2 (emphasis added). In suspending visitation, the court stated that it wanted to see if Mother and Father were "cooperating and drug free." **Id.** at 42. Hence, as indicated by the court in its Rule 1925(a) Opinion, the suspension of visitation was temporary. As the court stated, "It should be noted, the trial court did not permanently terminate visitation but solely provided an opportunity to assess the scope of Mother's addiction and protect [] Child from further harm." T.C.O. at 9.

For the foregoing reasons, we affirm the order of the trial court suspending Mother's visitation.

Order affirmed.

---

[8] Father tested positive for marijuana and cocaine as well. **See** Exhibit DHS 2, 7/17/19; **see also** Exhibit DHS 4, 4/29/19.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/19